UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

UNITED LAWYERS SERVICE, INC.,

                              Debtor.

-------------------------------------------------------x

        Case No. 22-11424 (MG)

        Chapter 11

**UNITED LAWYERS SERVICE, INC.'S ~~FIRST~~SECOND AMENDED SUBCHAPTER V
PLAN OF REORGANIZATION, DATED ~~APRIL 14~~MAY 11, 2023**

**Background**

**A.**    **Description and History of the Debtor's Business**

        The Debtor is a corporation organized and authorized to do business under the laws of the State of New York. United has been going to court for the busy attorney for nearly a century. Family owned and operated since its founding in 1913, the Company has built a bridge between law firms and the court system in the New York City area and beyond. In addition to its long-term presence in offices on lower Broadway, it has an office in Nassau County, and court coverage has expanded from the five boroughs to include seven additional counties – Nassau, Suffolk, Westchester, Rockland, Putnam, Orange and Dutchess.

        United provides complete clerical and court services in New York State, and local trial and Appellate courts in the five boroughs of New York City, Nassau, Suffolk, Westchester, Rockland, Putnam, Orange, and Dutchess Counties, as well as all County Clerk offices, Surrogate courts, and Federal District, Bankruptcy, and Appellate courts in the Southern and Eastern Districts of New York and the Second Circuit. The Company ~~handle~~handles virtually all courthouse clerical and calendar matters – the retrieval, copying, filing and e-filing of documents, the answering of calendar calls, the monitoring of cases, and much more.

        Seeing the decline in business, the Debtor attempted for several years prior to the filing to work with its prior landlord at 299 Broadway, New York, NY for smaller space, with those efforts ultimately rebuffed by that landlord. The disputes with the Debtor's prior landlord (the "Prior Landlord") rose to the point of an action being commenced against the Debtor on or about July 15, 2022 in landlord-tenant court in the Civil Court of the City of New York, County of New York, Non Housing Part 52 (the "State Court"), styled *299 Broadway, LLC v. United Lawyers Service Inc.*, index number LT-310572-22/NY, seeking approximately $480,000 for rent and additional rent. On or about October 17, 2022, the State Court entered a judgment of possession and a money judgment in the amount of $616,834.02 against the Debtor, but such judgment was stayed by Order to Show Cause entered on October 19, 2022.

        On October 31, 2022 (the "Petition Date"), the Debtor filed a voluntary petition and elected status under Subchapter V of chapter 11. Prior to the filing, the Debtor was able to secure

new, smaller space across the street from the old space at a substantially less rate than the former landlord. Although the Debtor still collects substantial revenues, business has been in decline in recent years with many of the tasks traditionally done moving to electronic operations. Because almost all of the Debtor's work involves the local, state and Federal court systems, the Debtor was also hit particularly hard by the shutdowns resulting from the COVID-19 pandemic. While most courthouses have reopened, many are still not fully open. The Debtor will be exploring other sources of revenue in an attempt to replace lost business, but there is no guaranty that such business will be found or be sufficient to offset any further declines that may occur in the near future as even more tasks the company regularly engages in move online.

**B.**     **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The Debtor is a services-based business so has little in the way of assets beyond office furniture and computer equipment. Its primary assets are the monies in its bank accounts and its accounts receivable. A liquidation analysis is attached to the Plan as **Exhibit A**. The Liquidation Analysis reflects that there is no right to setoff in favor of the Prior Landlord on the Debtor's pre-petition debt in the event the Debtor is successful post-petition in its claims against the Prior Landlord. In the event a setoff right did exist, and the Debtor disputes that it does, no money would be recovered and such success would result only in a reduction of the Prior Landlord's claim against the Debtor.

**C.**     **Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as **Exhibit B**.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $85,242.00, after accounting for payments to holders of pre-petition Allowed Secured Claims.

~~The final Pro Rata Distribution Plan payment is expected to be paid on the third anniversary of the Effective Date, with monthly payments to the holders of Allowed Secured Claims continuing as provided for in their specific treatment under this Plan, as confirmed.~~

**The financial projections are based on a combination of actual historical results factoring in the impact of COVID-19 on such results as well as reasonable educated estimates of anticipated performance and costs. The Debtor submits that its monthly operating reports as filed, which each reflect actual results from operations, supports the current accuracy of such projections and actually reflect an ability to generate greater disposable income than reflected on such projections.**

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

**D.      MATERIAL MODIFICATIONS TO PLAN FROM PRIOR VERSIONS**

**THIS PLAN SEPARATES CLASS 3 INTO THREE SUBCLASSES, WITH CLASS 3A COMPRISED SOLELY OF 299 BROADWAY LLC, THE DEBTOR'S FORMER LANDLORD.  IRRESPECTIVE OF THE PROJECTIONS, THIS PLAN AS AMENDED PROVIDES FOR PAYMENT TO CLASS 3A THE SUM OF $3,333.00 PER MONTH, WHILE EXTENDING THE PLAN PAYMENT PERIOD TO FIVE YEARS.**

## Article 1: Summary

This Plan of Reorganization (the "Plan") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of UNITED LAWYERS SERVICE, INC. (the "Debtor") from cash flow from operations, and, if brought and successful, from litigation recoveries.

This Plan provides for:        1 class of priority claims;
                               1 class of secured claims;
                               1 class of non-priority unsecured claims; and
                                with 3 subclasses; and
                               1 class of equity security holders.

Non-priority The non-priority unsecured creditors creditor holding an allowed claims claim, totaling $1,053,193.06 as reflected in filed Claim No. 3, in Class 3A will receive distributions over the five year life of the Plan, which the proponent of this Plan has valued at approximately $0.0570 0.1899 cents on the dollar based on an assumption that all claims are such claim is allowed in the amounts filed, or scheduled in the event such creditor did not file a proof of claim, which currently total approximately $1,493,332.¹ .¹ This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.).**

## Article 2: Classification of Claims and Interests

---

¹ The Internal Revenue Service filed a claim, which has been amended several times.  The Debtor continues to dispute 100% of that claim, has provided documentation to the IRS that all returns were filed timely, and all outstanding taxes paid, and continues to work with the Internal Revenue Service to address their questions.

**2.01 Class 1**   All allowed claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

**2.02 Class 2**   The claim of JPMorgan Chase, N.A., to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

**2.05 Class ~~3~~3A**   All non-priority, non-insider unsecured claims allowed under § 502 of the Bankruptcy Code for 299 Broadway LLC.

**2.06 Class 3B**   All other non-priority, non-insider unsecured claims allowed under § 502 of the Bankruptcy Code.

**2.06 Class 3C**   All non-priority, insider unsecured claims allowed under § 502 of the Bankruptcy Code.

**2.06 Class 4**   Equity interests of the Debtor.

### Article 3:
### Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

~~The Internal Revenue Service filed a claim, but the Debtor disputes 100% of that claim and has provided documentation to the IRS that all returns were filed timely and all outstanding taxes paid.~~

## 3.01 Unclassified Claims

Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

## 3.02 Administrative Expense Claims

Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Included in those claims shall be a fee and reimbursement of expenses for the Subchapter V Trustee and professional compensation and reimbursement of expenses for the Debtor's retained counsel in amounts to be determined by the Court after notice and a hearing.

The fees and expenses for the Debtor's retained professionals are currently projected to be approximately $10,000.00 through the Effective Date, net of any retainer(s) held by such professional(s), subject to application to and award by the Court.

The fees and expenses for the Subchapter V Trustee are currently projected to be approximately $10,000.00 through plan confirmation, subject to application to and award by the Court.

## 3.03 Priority Tax Claims

Each holder of a priority tax claim will be paid on account of such claim in full in cash through regular installment payments of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such claim, plus interest at the rate in effect as of the calendar month in which the plan is confirmed, pursuant to I.R.C. Sections 6601 and 6621 or other applicable statute, over a period ending not later than October 31, 2027, which is five years after the date of the entry of the order for relief in this case.

The Debtor believes that it has no outstanding tax debt (*see* footnote 1, *supra*) but includes this provision in the event it is determined that any such claims exist and are allowed.

## 3.04 Statutory Fees

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

The Debtor paid its case filing fee in full with the filing of its petition and is a case under Subchapter V of Chapter 11 of the Bankruptcy Code which does not impose any quarterly fee obligations on this Debtor. Accordingly, the Debtor believes that at the Effective Date it will have no fees owed or to be owed under 28 U.S.C. § 1930.

### Article 4: Treatment of Claims and Interests Under the Plan

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Claims (excluding those addressed in Article 3 above) | Impaired | Class 1 consists of the Allowed Priority (Non-Tax) Claims against the Operating Debtor. Upon the Effective Date of the Plan, in full satisfaction of its Allowed Priority Claim, each holder of an Allowed Priority Claim will be paid in full in equal monthly payments over 3̶5 years, except as otherwise agreed.<br><br>The Debtor believes there are no creditors in this class.<br><br>Class 1 Claims are impaired, and therefore holders of Class 1 Claims are entitled to vote to accept or reject the Plan. |
| Class 2 – Secured Claim of JPMorgan Chase, N.A. | Unimpaired | Class 2 consists of that amount of JPMorgan Chase, N.A.'s Allowed Claim which is an Allowed Secured Claim. This Allowed claim will be reinstated and paid according to its terms. JPMorgan Chase, N.A. will retain its lien against the assets of the Debtor.<br><br>In the event that any amount of the Allowed Claim of JPMorgan Chase, N.A. is unsecured under 11 U.S.C. §<br><br>506(a)(1), such unsecured amount shall be a part of Class 3̶3B.<br><br>The Class 2 Claim is unimpaired, and therefore the holder of the Class 2 Claim is not entitled to vote to accept or reject the Plan and is deemed to accept it. |
| Class 3̶3A – Non-priority unsecured c̶r̶e̶d̶i̶t̶o̶r̶s̶claim held by 299 Broadway | Impaired | Class 3̶3A consists of the Allowed General Unsecured C̶l̶a̶i̶m̶s̶Claim, assigned Claim No. 3, filed in the amount of $1,053,193.06, and asserted by 299 Broadway LLC against the Debtor. Upon the Effective Date of the Plan, in full satisfaction of its Allowed General |

[Link-to-previous setting changed from on in original to off in modified.].

8034076.3

| | | |
|---|---|---|
| LLC. | | Unsecured Claim, on the ~~yearly anniversary of the~~ 15th day of each month commencing immediately after the Effective Date ~~of~~, and every ~~year~~month thereafter for ~~three~~five consecutive years, ~~each~~the holder of ~~a~~this Class ~~3~~3A Claim shall receive the sum of $3,333.00 per month.<br><br>This proposed treatment is anticipated to result in an overall distribution of approximately 18.99%.<br><br>Any failure to make the payments required herein shall be governed by Article 8.09.<br><br>This Class 3A Claim is impaired, and therefore the holder of this Class 3 Claim is entitled to vote to accept or reject the Plan. |

*[Link-to-previous setting changed from on in original to off in modified.]*.

| Class 3B – All Other Non-priority, Non-Insider unsecured claims | Unimpaired | Class 3B consists of the Allowed General Unsecured Claims held by any non-insider of the Debtor as asserted against the Debtor, except for the Allowed General Unsecured Claims held by 299 Broadway LLC. |
|---|---|---|
| | | The Debtor believes that the only creditor that may have a claim in this Class 3B is JPMorgan Chase, N.A. for any deficiency claim above and beyond its Allowed Secured Claim in Class 2. JPMorgan Chase, N.A.'s claims against the Debtor are secured by a personal guaranty of Mark Plumer, an owner, officer and director of the Debtor. |
| | | Upon the Effective Date of the Plan, this Plan is not intended to and does not modify the terms of the underlying loan documents. In the event JPMorgan Chase, N.A. holds an Allowed Class 3B General Unsecured Claim, the Debtor, Mark Plumer and JPMorgan Chase, N.A. shall resolve the repayment of such Allowed Class 3B Claim on terms acceptable to those parties. |
| | | This Class 3B Claim is unimpaired, and therefore the holder of this Class 3B Claim is not entitled to vote to accept or reject the Plan. |
| Class 3C – All Non-Priority, Insider unsecured claims | Impaired | Class 3C consists of the Allowed General Unsecured Claims held by insiders of the Debtors as asserted against the Debtor. |
| | | Unless and until Class 3A shall have received the entirety of the projected payments as provided for in the treatment of Class 3A, holders of Allowed General Unsecured Claims by insiders of the Debtor shall receive no payment on account of such claims. |
| | | This Class 3C is impaired, and therefore the holders of a Class 3C Claim is entitled to vote to accept or reject the Plan. |

*[Link-to-previous setting changed from on in original to off in modified.].*

| | | Allowed General Unsecured Claim will receive a Pro Rata Distribution, of the Operating Debtor's projected disposable income as set forth in Exhibit B (approximately in aggregate the sum of 5.7%), except as otherwise agreed. The Operating Debtor's annual projected disposable income is $28,416.00. |
|---|---|---|
| Class 4 – Equity security holders of the Debtor | Unimpaired | Class 3 Claims are impaired Upon the Effective Date of the Plan, the holder of the Interests of the Debtor shall retain such Interest. Class 4 Interests are unimpaired, and therefore holders of Class 3 Claims 4 Interests are entitled deemed to vote have voted to accept or reject the Plan. |
| Class 4 – Equity security holders of the Debtor | Unimpaired | Upon the Effective Date of the Plan, the holder of the Interests of the Debtor shall retain such Interests. Class 4 Interests are unimpaired, and therefore holders of Class 4 are deemed to have voted to accept the Plan. |

## Article 5: Allowance and Disallowance of Claims:

### 5.01 Disputed Claims

A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i)     a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)    no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

### 5.02 Delay of Distribution on a Disputed Claim

No distribution will be made on account of a disputed claim unless such claim is Allowed by a final non-appealable order.

### 5.03 Settlement of Disputed Claims

The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

**6.01 Assume Executory Contracts and Unexpired Leases.**

(a)     The Debtor assumes the following executory contracts and unexpired leases as of the Effective Date:

>  Unexpired Non-Residential Real Property Lease by and between United Lawyers Service Inc., as lessee, and Reade Broadway Associates, as lessor.

>  Postage Meter Lease by and between United Lawyers Service Inc., as lessee, and Quadient Leasing, as lessor.

>  Employment Contract by and between United Lawyers Service Inc and George Young.

>  Employee Benefits Policy by and between United Lawyers Service Inc. and Oxford Health Plans

(b)     Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

(c)     A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

**6.02     Cure Payments**.

To the extent an executory contract or unexpired property or personal property lease was in a monetary default or otherwise had an amount due under such contract or lease as of the Petition Date, such monetary amount(s) owed shall be paid on the Effective Date of the Plan, or in accordance with any other agreement as between the Debtor and the contract or lease counterparty.

## Article 7: Means for Implementation of the Plan

The distributions to the creditors of the Debtor that are to be made on and after the Effective Date under this plan shall be funded from the ongoing operations of the Debtor post-Effective Date and existing cash of the Debtor. The Debtor specifically reserves all future income necessary for operating expenses and working capital.

The Debtor reserves the right to prosecute all causes of action, including its claims against 299 Broadway LLC listed in the Debtor's schedules.

## Article 8: General Provisions

**8.01 Definitions and rules of construction.**

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

"Allowed" or "Allowed Claim" means any Claim or Interest against the Debtor that is scheduled by or on behalf of the Debtor as not disputed, contingent or unliquidated, or proof or request for payment of which has been filed timely with the Court and, in either case, a Claim (a) as to which no objection has been interposed within one hundred twenty (120) days after the Effective Date or (b) as to which an objection has been interposed and such Claim has been allowed by a Final Order of the Court.

"Bankruptcy Code" means title 11 of the United States Code (11 U. S.C. §§ 1101, et seq.).

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as in effect on the Filing Date and as amended after the Filing Date and during the Debtor's chapter 11 case.

"Claim" means any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

"Confirmation Date" means the date on which the Court enters an order confirming this Plan.

"Court" means the United States Bankruptcy Court for the Southern District of New York.

"Disbursing Agent" means the person responsible for making distributions under this Plan as indicated in Section 9.03 of the Plan. If the Plan is confirmed under § 1191(a), ~~then~~the Debtor will be the Disbursing Agent. If the Plan is confirmed under § 1191(b), the Subchapter V Trustee will be the Disbursing Agent.

"Effective Date" shall have the same meaning as provided for in Section 8.02 of this Plan.

"Final Order" means an order of a Court as to which (a) any appeal that has been taken has been determined finally or dismissed or (b) the time for appeal has expired and (i) no timely appeal has been filed and (ii) no order having the effect of tolling or otherwise extending the appeal period is in effect.

"Pro Rata Distribution(s)" means, with respect to any Allowed Claim, the proportions that such Allowed Claim bears to the aggregate amount of all claims in such class.

"Reorganized Debtor" means the Debtor on and after the Effective Date.

## 8.02 Effective Date of Plan

The effective date (the "Effective Date") of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

## 8.03 Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## 8.04 Binding Effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

## 8.05 Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## 8.06 Controlling Effect

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## 8.07 Corporate Governance

Upon the Effective Date, the Debtor shall seek to and shall amend its articles of incorporation to include a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in payment of such dividends.

## 8.08 Retention of Jurisdiction

Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under the Plan have been made and performed and the Final Decree has been entered closing the Chapter 11 Case, the Court shall retain jurisdiction over this proceeding under the provisions of the Bankruptcy Code, including, without limitation, § 1142(b) thereof and the Bankruptcy Rules, to ensure that the intent and the purpose of the Plan is carried out and given effect. Without limitation by reason of specification, the Court shall retain jurisdiction for the following purposes:

(a) To consider any modification of the Plan pursuant to § 1193 of the Bankruptcy Code and/or any other modification of the Plan after substantial consummation thereof;

(b) To hear and determine:

    (i)     all controversies, suits and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

    (ii)    all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

    (iii)   all rights or Causes of Action which may exist on behalf of the estate, including actions commenced to recover preferential transfers, accounts receivable and other property of the estate, including, but not limited to, the Debtor's claims against 299 Broadway LLC;

    (iv)    applications for allowance of compensation and expense reimbursement of the Debtor's Professionals, and the Subchapter V Trustee, for periods prior to the Effective Date;

    (v)    any and all applications, adversary proceedings and litigated matters;

    (vi)    to enter a final decree closing the Chapter 11 Case; and

    (vii)   to the extent not expressly provided for above, any and all disputes arising under the Plan and proceedings in aid of the administration and/or consummation of the Plan.

### 8.09 Remedy Upon Default in Making Plan Payments

At any time during the Plan or until the Reorganized Debtor has fulfilled all of its payment obligations under the Plan, should the Reorganized Debtor find itself unable to afford the Plan's payments or to continue business operations, the Reorganized Debtor shall file a

~~request to modify the Plan or to convert the case to a case under Chapter 7 of the Bankruptcy Code or dismiss the case.~~

In the event any payment required pursuant to the Plan is more than ten (10) days overdue, ~~the Disbursing Agent shall file~~ a notice ~~with the Court indicating the~~of default will be deemed to have been issued as against the Debtor ("Default Notice"). ~~The Debtor will be entitled to a 45-day grace period after the transmission of the~~Thereafter, the Debtor shall have thirty (30) days after the deemed issuance of a Default Notice ~~(~~to cure such default (the "Grace Period")~~ to cure the default.~~  In the event the Grace Period expires, and the Debtor still has not cured the Default Notice, then immediately thereafter the Debtor shall submit to the Court an order converting this case to one under chapter 7 of the Bankruptcy Code (a "Conversion Order").  In the event that the Debtor does not submit a Conversion Order within three (3) days after expiration of the Grace Period, any Creditor holding an Allowed Claim may file and submit to the Court a Conversion Order on five (5) days' notice.

~~All parties in interest including the Disbursing Agent retain the right to request that the case be converted to a case under chapter 7 of the Bankruptcy Code or dismissed after the Default Notice is filed. If the Debtor has not cured the default within the Grace Period, creditors are entitled to commence a lawsuit in New York to liquidate its claim or otherwise enforce any judgment it obtained prior to the Petition Date. This provision survives the confirmation of the Plan, and creditors are entitled to enforce this provision post confirmation.~~ The Court retains jurisdiction to enforce this provision of the Plan.

## 8.10 Vesting of Assets

Pursuant to section 1141(c), as of the Effective Date, all property of the Debtor's estate will vest in the Reorganized Debtor, respectively, free and clear of any and all liens, debts, obligations, claims, liabilities, and all other interests of every kind and nature, except for the Plan Obligations and as otherwise provided under the Plan.

### Article 9: Discharge; Subchapter V Trustee; Disbursing Agent

9.01 If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt:

(i)      imposed by this Plan; or

(ii)      to the extent provided in § 1141(d)(6).

9.02 If the Debtor's Plan is confirmed under § 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt:

(i)      on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(iii)      excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**9.02 Role and Compensation of Subchapter V Trustee; Disbursing Agent**

(a)      Under section 330 of the Bankruptcy Code, the Subchapter V Trustee shall be compensated for services and reimbursed for expenses. The Subchapter V Trustee will apply to the Court for an award of compensation through the application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in the case.

(b)      If the plan is confirmed on a consensual basis under section 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee's services terminate and she is discharged from her trust upon substantial consummation of the Plan under section 1183(c)(1), and the Subchapter V Trustee may collect approved compensation for all services. The Subchapter V Trustee's allowed compensation, as with any other administrative expenses, is payable on the Effective Date of the Plan, unless the Subchapter V Trustee agrees to different treatment.

(c)      If the plan is confirmed on a non-consensual basis under section 1191(b) of title 11, then the Subchapter V Trustee will remain in place throughout the life of the Plan, and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. The Subchapter V Trustee shall be paid at a rate of $595.00 per hour, subject to annual firmwide adjustments, for services provided as the Subchapter V Trustee, including, but not limited to, duties concerning disbursements made by them under this Plan as confirmed. As such, the Subchapter V Trustee may file additional or supplemental fee applications throughout the life of the Plan. Upon approval of the Subchapter V Trustee's fee applications in a non-consensual case, as long as all professional administrative claims are similarly treated in the Plan, the Debtor shall pay all fee amounts due to the Subchapter V Trustee on the Effective Date of the Plan, over the remaining life of the Plan, or forthwith.

(d)      In the event that the Subchapter V Trustee is the Disbursing Agent and the Debtor fails to make timely payments of creditor disbursements to the Subchapter V Trustee, the Subchapter V Trustee may file and serve a ~~notice of delinquency~~<u>Default Notice</u> as set forth in Section 8.09 of the Plan.

**9.03 Disbursing Agent**

(a)      If the Debtor's Plan is confirmed under § 1191(a), the Debtor will be deemed to be the Disbursing Agent for all payments required to be made under this Plan as confirmed.

(b)      In the event the Debtor's Plan is confirmed under § 1191(b), the Subchapter V Trustee shall be deemed to be and function as the Disbursing Agent, with the Debtor required to make its payments of the calculated disposable income discussed in Section C above on a monthly basis to the Subchapter V Trustee, with the Subchapter V Trustee thereafter to disburse such payments to the respective creditors <u>also</u> on a ~~quarterly~~<u>monthly</u> basis.

**Article 10: Other Provisions**

**10.1 Directors, Officers of Debtor Post-Effective Date; Compensation.** Upon the Effective Date, the following persons shall serve in the respective corporate capacity in accordance with the Debtor's By-Laws as follows:

- Mark Plumer shall serve as the Debtor's President and Chairman of the Board, with a salary of $175,000.00 per annum as a w-2 employee;
- Todd Kramer shall serve as a Vice President of the Debtor with a salary of $120,000.00 per annum as a w-2 employee;
- George Young shall serve as the Secretary of the Debtor with a salary of $145,000.00 per annum as a w-2 employee as governed by George Young's employment contract with the Debtor;
- Danielle (Plumer) Benson shall serve as the Treasurer and a director of the Debtor;
- Cynthia Comerford shall serve as a director of the Debtor;
- Deborah Plumer shall serve as a director of the Debtor;
- Susan Armocida shall serve as a director of the Debtor;
- Michelle Plumer shall serve as a director of the Debtor.

**10.2 Deadline to File Fee Applications.** All professionals including the Subchapter V Trustee shall file their fee application no later than one month after the Effective Date.

**10.3 ~~Injunction.~~Injunctions.** (a) Effective on the Confirmation Date, all creditors who have held, hold, or may hold Claims against the Debtor or its assets are enjoined from taking any of the following actions against or affecting the Debtor or the assets of the Debtor with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor or the assets of the Debtor; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtor or its assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the assets of the Debtor; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due the Debtor or its assets; and (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

(b) In addition, the Debtor shall be enjoined from taking any of the following actions against or affecting 299 Broadway or its assets (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the 299 Broadway or the assets of 299 Broadway; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against 299 Broadway or its assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the 299 Broadway or the assets of 299 Broadway; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due 299

Broadway or its assets; and (v) proceeding in any manner whatsoever that does not conform to or comply with the provisions of the Plan.

**10.4 Limitation on Liability.** The Debtor, its retained professionals and the Subchapter V Trustee shall have or incur no liability to the extent allowed under § 1125(e) of the Bankruptcy Code and, in all respects, the Debtor and its retained professionals shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing in the Plan shall limit the liability of the retained professionals of the Debtor for malpractice to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. Title 22, Section 1200.0, Rule 1.8(h)(1) nor release any party for any claims of fraud, ultra vires acts, gross mismanagement, or willful misconduct, Additionally, the Plan shall not release or exculpate any person or entity from any Claim or Cause of Action existing as of the Effective Date (i) based on the Internal Revenue Code or other domestic state, city or municipal tax code; (ii) based on the

environmental laws of the United States or any domestic state, city or municipality; (iii) based on any criminal laws of the United States or any domestic state, city or municipality; (iv) based on the Securities Exchange Act of 1934, as now in effect or hereafter amended, the Securities Act of 1933, as now in effect or hereafter amended, or other securities laws of the United States or any domestic state, city, or municipality.

**10.5 Taxing Authority Remedy on Post-Confirmation Tax Obligations.** Notwithstanding any other provision of this Plan as confirmed, if the Debtor fails to comply with any of its post-confirmation tax obligations owed to a taxing authority (each a "Taxing Authority"), including, but not limited to, the Internal Revenue Service, such Taxing Authority may pursue collection of such post-confirmation liabilities against the Debtor through any means authorized by the applicable law, including, but not limited to, the Internal Revenue Code or other applicable law, including levy and seizure of the Debtor's assets, including any exempt property. Notwithstanding the foregoing, the Debtor shall have thirty (30) days to cure all delinquent post-confirmation tax liabilities. This 30-day period shall commence upon the issuance of a written notice of default by the Taxing Authority to the Debtor.

Respectfully submitted,

UNITED LAWYERS SERVICE INC.                22-11424 (MG)


/s/Mark Plumer_____



_____
Mark Plumer, President

CERTILMAN BALIN ADLER & HYMAN, LLP
Proposed Counsel to the Debtor and Debtor in Possession


/s/Robert D. Nosek_____
Richard J. McCord, Esq.
Robert D. Nosek, Esq.
90 Merrick Avenue
East Meadow, New York 11554
(516) 296-7171

| | |
|---|---|
| **Summary report:**<br>**Litera Compare for Word 11.2.0.54 Document comparison done on<br>5/11/2023 9:28:17 AM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://83298-DMS.IMANAGE.WORK/iManage/8014502/1 | |
| **Modified DMS:** iw://83298-DMS.IMANAGE.WORK/iManage/8034076/3 | |
| **Changes:** | |
| Add | 62 |
| Delete | 64 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 2 |
| Table Delete | 7 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 135 |