UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                                      Chapter 11

        UNITED LAWYERS SERVCE INC.                    Case No. 22-11424 (MG)

              Debtor.
-------------------------------------------------------------X

### DECLARATION OF MARK PLUMER IN SUPPORT OF CONFIRMATION OF SECOND AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Mark Plumer, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.      I am the President and Chief Executive Officer of United Lawyers Service Inc., the above-captioned debtor and debtor in possession (the "Debtor").

2.      I respectfully submit this declaration (the "Declaration") in support of confirmation of the *Second Amended Plan of Reorganization of United Lawyers Service Inc.,* dated May 11, 2023 (ECF Doc. No. 46) (the "Plan").  Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my knowledge of the Debtor's assets and financial position.

3.      If I were called upon to testify, I could and would testify competently as to the facts set forth herein.

**REQUIREMENTS FOR PLAN CONFIRMATION**

**The Plan**

4.      The Plan provides for payment of the disposable income from the Debtor over the life of the Plan.  Holders of administrative expense claims, except for professional fee claims, and Allowed priority Claims, if any, are to be paid in full in cash on the Effective Date and  Allowed priority tax Claims paid in Cash on the Effective Date, or over a period of time not later than five

1

(5) years from the Petition Date.  Professional fee claims are to be paid as and when awarded by the Court, with retained professionals and the appointed Subchapter V Trustee filing applications for same no later than thirty (30) days after entry of an order confirming the Plan.

5.      Under the Plan, existing shareholders will retain their respective equity ownership interests in the post-confirmation Debtor.

6.      As reflected in the Plan, and as evidenced by the claims register on file with the Court, the Debtor has few creditors, each of which is proposed to receive different treatment under the Plan.

7.      As has been explained to me by the Debtor's bankruptcy counsel, I believe that the Debtor has satisfied all of the requirements for confirmation of a chapter 11, subchapter V plan under Bankruptcy Code §§ 1129(a) and 1191, including satisfying administrative and priority claims.

8.      After consulting with the Debtor's bankruptcy counsel, I respectfully submit that the Plan can and should be confirmed as a consensual plan under Section 1191(a) of the Bankruptcy Code because it meets all of the requirements set forth in Section 1129(a) of the Bankruptcy Code to the extent required by Section 1191(a), as follows:

a.  **§ 1129(a)(1)**.  The Plan complies with the applicable provisions of the Bankruptcy Code.  Specifically, the Plan fully complies with the requirements of §§ 1122, 1123, and all other applicable provisions of the Bankruptcy Code since it provides for proper classification, impairment and treatment of Claims; provides adequate means of implementation; and contains appropriate provisions for treatment of unexpired leases and executory contracts, retention of causes of action, retention of jurisdiction and the like. For instance, Articles 2 and 4 of the Plan set forth the

2

classification of Claims and equity interests (each, and "Interest") and provide for treatment of all Classes and other categories of Claims and Interests. Article 4 of the Plan specifies which Classes are unimpaired or impaired under the Plan. The Plan places similarly situated Claims and Interests in the same Class and treats identically each Claim or Interest within a particular Class. Moreover, Article 3, 6, 7 and 9 of the Plan provide for adequate means for the Plan's implementation including, without limitation: (a) funding of cash payments to holders of Allowed Claims; (b) payment of Allowed Administrative Claims and Professional Fee Claims; (c) specified distribution mechanisms and procedures; (d) assumption of an unexpired leases and certain executory contracts; and (e) the post-confirmation retention of jurisdiction by this Court as necessary in connection with the implementation and consummation of the Plan. The Plan also complies with §1190 as it includes: a brief history of the business operations of the Debtor; a liquidation analysis; and projections with respect to the ability of the Debtor to make payments under the Plan;

b. **§ 1129(a)(2)**. The Debtor, as the proponent of the Plan, complied with the applicable provisions of the Bankruptcy Code. Specifically, the Debtor complied with the applicable disclosure and solicitation provisions of the Bankruptcy Code and the orders entered by the Court scheduling the confirmation hearing [ECF Doc. Nos. 41, 48];

c. **§ 1129(a)(3)**. The Debtor proposed the Plan in good faith and not by any means forbidden by law. This case was commenced in good faith by the Debtor to seek a reorganization of its business through the plan process provided by subchapter V

7211968.2

of chapter 11 of the Bankruptcy Code. The Debtor believes that each creditor and equity interest holder will receive property with a value to such creditors and equity interest holders at least equal to the value of any distributions, if any, which they would receive in a liquidation scenario. The Debtor, through its counsel, and with the assistance and at times participation of the Subchapter V trustee, engaged in meaningful discussions with its creditors resulting in the terms of this Plan. Moreover, based on the advice of the Debtor's bankruptcy attorneys, I believe that the Plan has been proposed in compliance with all applicable laws, rules and regulations;

d. **§ 1129(a)(4)**. Any payment made or promised for services or for costs and expenses in or in connection with, the case, or in connection with the Plan and incident to the case, have been disclosed to the Bankruptcy Court or are subject to the approval of the Bankruptcy Court as reasonable. The Plan provides for the filing of professionals fee applications, including the subchapter V trustee, to be filed within one month after the Effective Date of the Plan (*see* Art. 10.2);

e. **§ 1129(a)(5)**. As reflected in Article 10.1, the existing officers and directors of the Debtor will continue to serve in their current capacities. I submit that such continuations are in the best interests of the Debtor and its creditors and the equity security holders of the Debtor. Moreover, Article 10.1 reflects the compensation, if any, for such officers and directors.

f. **§ 1129(a)(7)**. Each holder of a claim or interest in impaired Classes under the Plan has accepted the Plan or will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not

7211968.2

less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. In this regard, my professionals and I have prepared an analysis of the estimated recovery that holders of Creditor Claims would receive if the Debtor's estate was liquidated under chapter 7 of the Bankruptcy Code (the "Liquidation Analysis"). The Liquidation Analysis is attached to the Plan as "Exhibit A". Under the scenario presented under the Plan, holder of the Class 3A Claim will receive over the five year life of the Plan, if confirmed, the sum of $200,000, paid $3,333.00 per month for five years. Such distribution is equal to approximately 18.99% of its Claims. In contrast, in the event of a liquidation under chapter 7 of the Bankruptcy Code, it is likely that such creditor would receive nothing. At best, the Liquidation Analysis reflets a total liquidation value substantially less than the amount projected to be paid out on the Class 3A Claim, and that is before factoring in the secured claim of JPMorgan Chase, N.A. and the chapter 11 and chapter 7 administrative expenses. Thus, I respectfully submit that the Plan in the best interests of creditors;

g. **§ 1129(a)(8)**. Under the Plan, the holders of the impaired Claims in Class 1, Class 3A and Class 3C were permitted to vote as to the acceptance or rejection of the Plan. The Debtor did not receive any votes from Class 1 but believes that it has no creditors in that class. Class 3A is comprised solely of the Allowed General Unsecured Claims of 299 Broadway LLC, the Debtor's former landlord. Class 3C is comprised solely of insider claims. As confirmed by the Certification of Acceptances which is being filed separately by the Debtor's counsel, the Plan was accepted by the holder of the Allowed General Unsecured Claim in Class 3A who

7211968.2

submitted a completed ballot. Additionally, I, as an insider of the Debtor, submitted a ballot for my Class 3C claims to accept the Plan. The balance of the classes under the Plan were not impaired and, thus, I am told by the Debtor's counsel are deemed to have accepted the Plan;

h. **§ 1129(a)(9)**. The Plan provides that administrative expense claims shall be fully paid (i) on the Effective Date of the Plan; or (ii) in accordance with agreements made between the Debtor and the holders of such Claims. *See* Art. 3.02. The Plan further provides for payment of any Priority Tax Claim in full either on the Effective Date of the Plan or in equal consecutive monthly cash installment payments in an amount equal to the Allowed Priority Tax Claims, with interest, commencing upon the Effective Date and continuing through a period not exceeding five years after the Petition Date absent the consent of the holders of such Claims. *See* Art. 3.03. However, the Debtor believes that no such claims are owed;

i. **§ 1129(a)(10)**. As discussed above, the Plan has been accepted by Class 3A, which is impaired under the Plan, determined without including any acceptance of the Plan by any insider;

j. **§ 1129(a)(11)**. The Debtor's professionals and I have analyzed the Debtor's ability to service the post-confirmation indebtedness contemplated by the Plan and pay its ongoing day-to-day operating expenses. As part of this analysis, projections of the Debtor's financial performance were prepared, as annexed to the Plan as Exhibit B (the "Projections"). Moreover, the Debtor has regularly filed its monthly operating reports. The financial information submitted in support of the Plan and evidencing

7211968.2

actual performance during the case reflects an ability to generate positive cash flow. Although the Plan provides for a payment of $3,333.00 to the holder of the Class 3A Claim, which is an amount higher than current performance, I believe that for as long as the Debtor operates it will be able to make that payment. Mechanisms are built into the Plan that incentivize the Debtor to make all Plan payments, and I am confident that for as long as the Debtor operates it will find a way in which to make its Plan payments. Based thereon, I believe that the Plan is feasible and that confirmation thereof is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor;

k. **§ 1129(a)(12)**. The Plan provides for the full payment of all statutory fees payable under 28 U.S.C. §1930 on the Effective Date of the Plan. However, I am advised by bankruptcy counsel to the Debtor that because this case is one proceeding under subchapter V of chapter 11 of the Bankruptcy Code, no such fees have accrued during the case and none will be due on the Effective Date or thereafter; and

l. I have been advised by my counsel that §§ 1129(a)(6), 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(l6) of the Bankruptcy Code are inapplicable to the Debtor's chapter 11 subchapter V case.

9. I understand that all of the conditions precedent to confirmation of the Plan have been satisfied, will be satisfied prior to the confirmation confirmation hearing, or have been waived.

10. The Proponents are the only parties to have filed a Plan in this case.

7211968.2

11.     The principal purpose of the Plan is to reorganize the Debtor and continue as a going concern, not to seek the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

12.     In consideration of the classification, distribution and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all the Claims and controversies resolved pursuant to the Plan.

13.     As stated above, Class 3A has affirmatively accepted the Plan. With regard to the Impaired Claims of holders of Claims in Class 1, the Debtor believes none exist.  As for the Impaired Claims of holders of Claim in Class 3C, the undersigned and other insiders voted to accept the Plan but understands after speaking with the Debtor's bankruptcy counsel that such acceptance is ignored for confirmation purposes because of our status as insiders.

**RELEASES AND EXCULPATION**

14.     The Plan provides for no releases of direct claims held by third-parties against other third parties.

15.     Article 10.4 of the Plan provides for the exculpation of certain parties for any liability incurred in connection with any acts or omissions in connection with the filing or consummation of the Plan.

16.     I believe that it is appropriate under the circumstances of this case for the Plan to provide the exculpations provided for in the Plan because those parties each provided valuable services or contributions during the Chapter 11 Case and those services were integral to the development of the Plan. In addition, the Debtor believes that it holds no claims against those parties.  The Plan provides that the exculpation under the Plan shall not be construed as a release of any person's claims or liabilities arising out of or relating to any act or omission (i) based on

7211968.2

the Internal Revenue Code or other domestic state, city or municipal tax code; (ii) based on the environmental laws of the United States or any domestic state, city or municipality; (iii) based on any criminal laws of the United States or any domestic state, city or municipality; (iv) based on the Securities Exchange Act of 1934, as now in effect or hereafter amended, the Securities Act of 1933, as now in effect or hereafter amended, or other securities laws of the United States or any domestic state, city, or municipality.

**CONCLUSION**

17.     Based upon the facts set forth herein, I believe that the Plan satisfies all of the applicable confirmation requirements contained in the Bankruptcy Code and should be confirmed at this time.

Executed in New York, New York on May 12, 2023.

    /s/Mark Plumer
Mark Plumer, President

7211968.2